UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

SAM COOPER,

        Plaintiff,

        v.

GARRETT WICKS,

        Defendant.

21-CV-453-LJV-HKS
DECISION & ORDER

———————————————————

On February 22, 2021, the pro se plaintiff, Sam Cooper, commenced this action under 42 U.S.C. § 1983.  Docket Item 1.  Cooper alleged that the defendant, Correction Officer Garrett Wicks, violated his constitutional rights under the Eighth and Fourteenth Amendments by assaulting Cooper at the Lakeview Shock Correctional Facility ("Lakeview").  *See id.*; *see* Docket Item 11 (amended complaint).  This Court dismissed Cooper's official capacity and due process claims at the screening stage under 28 U.S.C. § 1915(e)(2)(B) and 1915A but allowed his Eighth Amendment claim based on excessive force to proceed to service.  Docket Item 17.

About a year later, Wicks moved for summary judgment on Cooper's remaining claim.  Docket Item 40.  After Cooper responded, Docket Item 42, Wicks replied, Docket Item 43.  Cooper then filed a motion to appoint counsel to assist him at "a jury trial." Docket Item 44.

For the reasons that follow, Wicks's motion for summary judgment is granted, and Cooper's motion to appoint counsel is denied as moot.

**BACKGROUND**[1]

The underlying dispute in this case stems from an encounter at Lakeview on

June 18, 2019.  The parties agree that at the time, Cooper was incarcerated at

Lakeview, Wicks worked there as a correction officer, and the two had an altercation of

some kind.  *See* Docket Item 40-2 at ¶¶ 7-10; *see also* Docket Item 11 at 2, 4, 6.[2]  But

as to exactly what happened, they agree about little else. *Compare* Docket Item 40-2 at

¶¶ 9-13 (Wicks's statement of facts), *with* Docket Item 40-3 at 2-16 (Cooper's deposition

testimony).

---

[1] On a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party.  *See Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  "Before summary judgment may properly be entered against a pro se litigant, the district court must ensure that the litigant is given notice as to the nature of a motion for summary judgment and as to his obligations to respond to such a motion." *Kepner v. Coleman*, 208 F.3d 203, 203 (2d Cir. 2000) (summary order) (italics omitted) (citing *McPherson v. Coombe*, 174 F.3d 276, 280-82 (2d Cir. 1999)).  Here, as required under Local Rule of Civil Procedure 56(b), Wicks filed and served a "Notice to Pro Se Litigants Opposing Summary Judgment" with his summary judgment motion.  Docket Item 40 at 2 (italics omitted); *see McPherson*, 174 F.3d at 281 (explaining that "a [d]istrict [c]ourt need not advise a pro se litigant as to the nature of summary judgment where an opposing party has already provided the litigant with the requisite notice" (italics omitted) (quoting *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 621 (2d Cir. 1999))).

Despite that notice, Cooper submitted only one page in opposition to Wicks's motion for summary judgment, and he did not file any statement of facts.  *See* Docket Item 42 at 1.  Therefore, the facts in this decision are taken from Wicks's statement of facts, Docket Item 40-2; the excerpts of Cooper's deposition submitted by Wicks, Docket Item 40-3; and the other declarations and exhibits submitted by Wicks, Docket Items 40-4, 40-5, and 40-6.  But as required, this Court has construed the facts in the light most favorable to Cooper, the non-moving party.  *See Collazo*, 656 F.3d at 134. Further, in light of Cooper's "pro se status, the Court in its discretion has conducted an independent review of the record to ascertain whether disputes of material fact exist that would preclude summary judgment in favor of [Wicks]."  *See Baxter v. Vespa*, 745 F. Supp. 3d 54, 56 (W.D.N.Y. 2024) (italics omitted).

[2] Page numbers in docket citations refer to ECF pagination.

According to Cooper's deposition testimony, on the day in question, Wicks told him that he "wasn't holding [his] razor properly . . . to go shave."  Docket Item 40-3 at 3. Wicks then told Cooper to "start running" and to "keep going" until Wicks told him "to stop."  *Id.*  When Cooper "stopped running" and attempted to go to "[his] cube," Wicks "ran up to [Cooper] and put [his] hands around [Cooper's] neck."  *Id.*  Wicks then began "choking [Cooper] with one hand and hitting [him] with the . . . open palm" of Wicks's other hand "more than three[ or] four times."  *Id.* at 3-5.  Cooper did not hit back, but he "had to remove [Wicks's] hand from [his] neck" because "that[ was] how bad [Wicks] was choking [him]."  *Id.* at 5.

Cooper did not suffer any physical injuries as a result of the alleged assault because, he says, as a correction officer, Wicks "kn[e]w how to assault someone without leaving injuries."[3]  *Id.* at 6.  Moreover, even though Wicks had been the aggressor and Cooper had not done anything to provoke Wicks's rage, Wicks wrote up a false "[i]nmate misbehavior report" to "try to cover himself," accusing Cooper of "thr[owing a] razor" and refusing to "follow[] direct orders."[4]  *Id.* at 7-8.

Wicks "do[es] not recall the incident that [Cooper] is alleging [occurred]," *see* Docket Item 40-4 at ¶ 6, but he nonetheless contests Cooper's account.  Wicks says that at the time of the incident, he "was a drill instructor at Lakeview"; that in that position he "interact[ed] with several hundred incarcerated individuals each year"; and that he "ha[s] never assaulted any incarcerated individuals while . . . employed by" the

---

[3] While Cooper attests that he suffered no physical injury, he says that as a result of the encounter with Wicks, he "ha[s] a mental injury" and does not "trust correction officers anymore."  Docket Item 40-3 at 14-15.

[4] Cooper says that based on Wicks's report, he was sent to solitary confinement and subjected to other sanctions.  Docket Item 1 at 9.

Department of Corrections and Community Supervision ("DOCCS").  Docket Item 40-4

at ¶¶ 5, 7.  Wicks also relies on his inmate misbehavior report, confirming that he

"prepared [the report] documenting the incident," *id.* at ¶ 6; *see id.* at 5 (copy of report),

and swearing that he has "never issued a false misbehavior report against Cooper or

any other incarcerated individual," *id.* at ¶ 8.  According to the report, after Wicks

"observed . . . Cooper . . . out of uniform and gave him a direct order to return to his

cube and get dressed," Cooper "threw his razor," yelled out expletives, and ignored

Wicks's orders to stop.  *Id.* at 5.

At his deposition, Cooper testified that he has "filed numerous grievances" while

incarcerated and that he is "very familiar" with the grievance process.  Docket Item 40-3

at 10-11.  But he also testified that he "did[ not file] a grievance" based on the "incident

with Wicks" and instead "went straight to" the Office of Special Investigations ("OSI")

because those "are the people that you report assaults to."  *Id.* at 11.  He explained at

his deposition that he "made a complaint on a grievance form with OSI" and "bypasse[d]

the grievance process because" his complaint concerned "an assault" and "[b]ecause

[he] would have made the situation worse for [him]self" by filing a "regular grievance."

*Id.* at 12.  "Once they found out it was a grievance," he says, he "would have possibly

been getting assaulted [at] other facilities for putting in a grievance at that facility."  *Id.*

## LEGAL PRINCIPLES

"A motion for summary judgment may be granted 'if the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law.'"  *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting Fed. R. Civ.

P. 56(a)).  "Summary judgment is appropriate when 'there can be but one reasonable

conclusion as to the verdict,' i.e., 'it is quite clear what the truth is,' and no rational factfinder could find in favor of the nonmovant." *Id.* (first quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); and then quoting *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962)). Conversely, "[s]ummary judgment should be denied if, when the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party." *Id.* "In deciding such a motion, the court cannot properly make credibility determinations or weigh the evidence." *Id.*

"In a pro se case, the Court must . . . liberally construe the party's pleadings 'to raise the strongest arguments that they suggest.'" *Castro-Ramirez v. U.S. Citizenship & Immigr. Servs.*, 2014 WL 2440696, at *3 (S.D.N.Y. May 30, 2014) (italics omitted) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999)). "Nonetheless, a pro se litigant must still be held to the normal requirements of summary judgment, and 'bald assertions,' unsupported by evidence, will not overcome a motion for summary judgment." *Id.* at *4 (alteration and italics omitted) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## DISCUSSION

Wicks argues that he is entitled to summary judgment because Cooper failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA").[5] Docket Item 40-1 at 5-8. This Court agrees.

---

[5] Wicks argues that he also is entitled to summary judgment because Cooper's allegations do not state a viable claim for excessive force, Docket Item 40-1 at 8-12, and because even if "a question of fact" existed about Wicks's use of excessive force, he is entitled to qualified immunity, *id.* at 12-15. Because this Court holds that Cooper

## I.    THE PLRA'S EXHAUSTION REQUIREMENT

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see Perttu v. Richards*, 145 S. Ct. 1793, 1798 (2025).  "[T]he PLRA's exhaustion requirement applies to 'all inmate suits about prison life, whether they involve general circumstances or particular episodes.'"  *Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).

The Supreme Court has made clear that the "mandatory language" of the PLRA "means [that] a court may not excuse a failure to exhaust" even in light of "special circumstances."  *See Ross v. Blake*, 578 U.S. 632, 639 (2016).  Nonetheless, noting the explicit language of the statute, the Court also has held that "[a] prisoner need not exhaust remedies if they are not 'available.'"  *Id.* at 635-36.  Indeed, in *Ross*, the Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  *Romano v. Ulrich*, 49 F.4th 148, 153 (2d Cir. 2022) (quoting *Ross*, 578 U.S. at 643).  More specifically, an administrative remedy is "unavailable" (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the "administrative scheme [is] so opaque that it becomes, practically speaking, incapable

---

has not exhausted his claim as required by the PLRA, *see infra* Section II, it need not and does not reach those arguments.

of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* (quoting *Ross*, 578 U.S. at 643-44).

"[F]ailure to exhaust is an affirmative defense." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015). So on a motion for summary judgment asserting the failure to exhaust, the "defendant[] bear[s] the initial burden of establishing, by pointing to 'legally sufficient source[s]' such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Id.* (quoting *Mojias v. Johnson*, 351 F.3d 606, 610 (2d Cir. 2003)); *see Baxter v. Vespa*, 745 F. Supp. 3d 54, 59 (W.D.N.Y. 2024). "[O]nce a defendant demonstrates that the plaintiff has not exhausted his administrative remedies," however, "'the burden of proof shifts to the plaintiff to show that his case falls under at least one of the exceptions' to the exhaustion requirement." *Engles v. Jones*, 2018 WL 6832085, at *9 (W.D.N.Y. Dec. 28, 2018) (quoting *Perry v. Rupert*, 2013 WL 6816795, at *4 (N.D.N.Y. Dec. 20, 2013)). "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs*, 788 F.3d at 59.

## II.    WHETHER COOPER PROPERLY EXHAUSTED HIS CLAIM

Wicks says that Cooper did not properly exhaust his excessive force claim. *See* Docket Item 40-3 at 5-8. More specifically, he says that Cooper did not follow the "incarcerated individual grievance process established by 7 N.Y.[ Comp. Codes R. & Regs.] § 701.5." Docket Item 40-1 at 7 (citing Docket Item 40-6).

That process generally has three steps.  First, the inmate must file "a grievance with the Inmate Grievance Resolution Committee [('IGRC')]."  *Engles*, 2018 WL 6832085, at *9 (quoting *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010)).  Second, "the inmate may appeal an adverse decision to the prison superintendent."  *Id.* (quoting *Crenshaw*, 686 F. Supp. 2d at 236).  Third, and "[f]inally, the inmate may appeal the superintendent's decision to the Central Office Review Committee ('CORC')."  *Id.* (quoting *Crenshaw*, 686 F. Supp. 2d at 236).  "In general, a prisoner must complete "all three levels of review" before "seek[ing] relief in federal court under [section] 1983."  *Id.* (quoting *Crenshaw*, 686 F. Supp. 2d at 236); *see Bonie v. Annucci*, 2023 WL 2711349, at *9 (S.D.N.Y. Mar. 30, 2023) ("To satisfy the exhaustion requirements, a prisoner 'must exhaust all levels' of DOCCS's . . . three-step grievance process" (quoting *Little v. Mun. Corp.*, 2017 WL 1184326, at *11 (S.D.N.Y. Mar. 29, 2017)); *Haywood v. Fuller*, 2019 WL 1639743, at *4 (N.D.N.Y. Apr. 16, 2019) ("Generally, if a plaintiff fails to follow each of the[se] required three steps . . . prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA."), *report and recommendation adopted*, 2019 WL 2442142 (N.D.N.Y. June 12, 2019).

It is undisputed that Cooper did not follow any of those steps here.  Wicks submitted declarations from Gareth Sebouhian, an Inmate Grievance Program Supervisor at Lakeview, and Rachael Seguin, the Director of the Incarcerated Grievance Program at the CORC, Docket Items 40-5 and 40-6, stating under penalty of perjury that Cooper did not file a grievance with the IGRC or appeal to the CORC in connection with his June 19 encounter with Wicks, Docket Item 40-5 at ¶ 5; Docket Item

40-6 at ¶¶10-13.  What is more, at his deposition, Cooper admitted under oath that he did not file a grievance, *see* Docket Item 40-3 at 11-12, and having failed to satisfy the first step of the process, he necessarily failed to satisfy the second and third.

Cooper argues that he nonetheless exhausted his excessive force claim by "report[ing] the assault to" OSI.  *See* Docket Item 42 at 1.  More specifically, he says that he "made a complaint on a grievance form with [the] OSI," which he suggests was appropriate because his claim "deal[t] with assault" and assault claims may "bypass[]" the grievance process."  Docket Item 40-3 at 11-13.  But "[t]he Second Circuit has made clear that even if prison officials have notice of a prisoner's claims as a result of . . . informal communications, the purposes of the PLRA's exhaustion requirement can only be realized through strict compliance with the applicable administrative procedures." *McGowan v. Schuck*, 2018 WL 4354212, at *4 (W.D.N.Y. Sept. 12, 2018) (quoting *Mims v. Yehl*, 2014 WL 4715883, at *5 (W.D.N.Y. Sept. 22, 2014)); *see Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order).  Indeed, in *Day*, a Second Circuit panel held that "informal letters of complaint . . .  sent to . . . Connecticut Department of Correction officials" did not satisfy the PLRA's exhaustion requirement because those letters "d[id] not conform to the [established] administrative remedy procedures."[6] F. App'x at 474.

---

[6] The fact that Cooper says he used a "grievance form," Docket Item 40-3 at 11-13, rather than writing an "informal letter[]" to OSI makes no difference here:  Even if sending that form to OSI counted as filing a "grievance"—which this Court doubts in light of the caselaw, *see infra*—there is no indication in the record that OSI acted on the communication in any way.  And it is undisputed that Cooper did not appeal any determination to the CORC.  Docket Item 40-6 at ¶¶ 10-13.  So he clearly did not fulfill all required procedural steps.

So Cooper's complaint to OSI is of no moment:  Courts in this circuit have stated

that filing a "complaint [with OSI is] insufficient to satisfy [the] exhaustion requirement."

*See Haywood*, 2019 WL 1639743, at *5;  *Castineiras v. Helms*, 2019 WL 2870300, at *6

n.8 (N.D.N.Y. June 6, 2019) (stating that filing a complaint "directly with the Inspector

General or OSI" is normally "not . . . sufficient for exhaustion purposes")*, report and

recommendation adopted*, 2019 WL 2869332 (N.D.N.Y. July 3, 2019); *see also Espey*

*v. Rice*, 2020 WL 4368663, at *3 (W.D.N.Y. July 30, 2020) (rejecting plaintiff's

contention that failure to file grievance should be excused "because he believed that his

mother's" forwarding of a letter from plaintiff to OSI "was sufficient").  And although

Cooper contends that he was able to "bypass[]" the grievance process because his

claims involved assault, that is not so:  In fact, *Haywood*, *Castineiras*, and *Espey* all

involved allegations of correction officers' physically assaulting the plaintiffs.[7]  *Haywood*,

2019 WL 1639743, at *1; *Castineiras*, 2019 WL 2870300, at *1; *Espey*, 2020 WL

4368663, at *1.

In sum, because Wicks has met his burden to show that Cooper did not exhaust

his claim, "[t]he burden thus shifts to [Cooper] to show that his failure to exhaust his

---

[7]  Because grievances about "employee harassment"—including "claims of excessive force"—"'are of particular concern to the administration of [DOCCS] facilities,'" they are "subject to an expedited procedure."  *Terry v. Hulse*, 2018 WL 4682784, at *7 & n.7 (S.D.N.Y. Sept. 28, 2018) (alteration in original) (quoting 7 N.Y.[ Comp. Codes R. & Regs.] § 701.8).  But "an inmate must still follow the procedures . . . contained in 7 N.Y.[ Comp. Codes R. & Regs.] § 701.5(a)."  *See Terry*, 2018 WL 4682784, at *7.  Cooper did not do that here.

In contrast, complaints about "sexual abuse or harassment," may bypass the ordinary grievance process; indeed, New York State regulations "create[] a relaxed exhaustion requirement" for such allegations.  *See Sheffer v. Fleury*, 2019 WL 4463672, at *4 (N.D.N.Y. Sept. 18, 2019).  But Cooper has not asserted any such claims.

administrative remedies is excused under one of the [three] exceptions" to that

requirement.  *Espey*, 2020 WL 4368663, at *3.  That is, the Court considers whether

there is any disputed issue of material fact as to whether administrative relief through

the grievance process was simply "unavailable" to Cooper.  *See Ross*, 578 U.S. at 643-

44.

It is clear that neither of the first two exceptions apply here.  Cooper does not

argue that the administrative grievance process operated as a "dead end" or was so

"opaque" as to be unusable, *see id.*, and there are no facts in the record before the

Court to support such a finding, *see* Docket Item 42; *see also* Docket Item 40-3.  On the

contrary, Cooper testified under oath that he has "filed numerous grievances" and is

"very familiar" with the process.  Docket Item 40-3 at 10.

The only question remaining, then, is whether administrative relief was

nonetheless unavailable because "prison administrators thwart[ed Cooper] from taking

advantage of [the] grievance process through machination, misrepresentation, or

intimidation."  *Ross*, 578 U.S. at 643-44.  Cooper does say, in his deposition, that he

sent a letter to OSI instead of filing a grievance because he believed that doing the

latter "would have made the situation worse"—that "[o]nce they found out it was a

grievance, [Cooper] would have possibly been getting assaulted [at] other facilities for

putting in a grievance at that facility."  Docket Item 40-3 at 10.

But such a conclusory and speculative statement does not create a question of

material fact about the unavailability of administrative relief here.  Cooper does not

identify a particular person or group that he feared; his statement is entirely general and

apparently based on possible future events at another facility.  *See id.*  Other courts

have found that such allegations are not enough to survive even a motion to dismiss.

*See Aviles v. Tucker*, 2016 WL 4619120, at *4 (S.D.N.Y. Sept. 1, 2016) (stating that

"conclusory allegation in the [c]omplaint that [p]laintiff was afraid to file a grievance,

absent any explanation of the reason for [p]laintiff's fear or descriptions of prior

scenarios of intimidation by correction officers, cannot support a finding that the

grievance process was unavailable to [p]laintiff"); *Harrison v. Stallone*, 2007 WL

2789473, at *5 (N.D.N.Y. Sept. 24, 2007) (granting motion to dismiss where plaintiff

stated only that he "feared retaliation" and explaining that "[i]f an inmate could simply

state that he feared retaliation [to evade the exhaustion requirement], there would be no

point in having a grievance procedure because . . . 'any inmate complaint can result in

retaliation'" (quoting *Hines v. Valhalla Cnty. Corr. Facility*, 2002 WL 1822740, at *3

(S.D.N.Y. Aug. 8, 2002))).[8]  And Cooper's statement certainly is not enough to survive

summary judgment here, especially when he had "filed numerous grievances" in the

past.  *See* Docket Item 40-3 at 10.[9]

Wicks's motion for summary judgment therefore is granted because Cooper has

failed to exhaust his administrative remedies.  And in light of that ruling, Cooper's

motion for this Court to appoint counsel at trial is denied as moot.

---

[8] In both *Aviles* and *Harrison*, the plaintiff's failure to exhaust was "clear from the face of the [c]omplaint."  *Aviles*, 2016 WL 4619120, at *4; *Harrison*, 2007 WL 2789473, at *3.

[9] The Supreme Court's recent decision in *Perttu* does not change this analysis. In that case, the Court held that a plaintiff "has a right to a jury trial"—as opposed to a factual hearing before a judge—"on [the issue of] PLRA exhaustion when that dispute is intertwined with the merits of the underlying suit."  145 S. Ct. at 1798, 1807.  Here, in contrast, there is no disputed issue of material fact regarding exhaustion.

## **CONCLUSION**

For the reasons stated above, Wicks's motion for summary judgment is GRANTED, and Cooper's motion to appoint counsel is DENIED as moot. The Clerk of the Court shall close this case.

This Court hereby certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals in forma pauperis is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal in forma pauperis should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:   July 11, 2025
             Buffalo, New York


   */s/ Lawrence J. Vilardo*
   LAWRENCE J. VILARDO
   UNITED STATES DISTRICT JUDGE